IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NATIONAL RIFLE ASSOCIATION OF )
AMERICA, INC., et al., )
                              )
            Plaintiffs,       )
                              )
    v.                        )   No.  08 C 3696
                              )
VILLAGE OF OAK PARK,          )
                              )
            Defendant.        )
_____)
                              )
NATIONAL RIFLE ASSOCIATION OF )
AMERICA, INC., et al.,        )
                              )
            Plaintiffs,       )
                              )
    v.                        )   No.  08 C 3697
                              )
CITY OF CHICAGO,              )
                              )
            Defendant.        )

MEMORANDUM OPINION AND ORDER

Fresh from a historic victory for their cause before the Supreme Court in Dist. of Columbia v. Heller, 128 S.Ct. 2783 (2008), the National Rifle Association of America, Inc. ("Association") and some of its members filed these two lawsuits just one day after the Heller decision.[1] These cases have taken aim at the gun control ordinances in the City of Chicago and the

---

[1] Even so, the Association was not quite as quick on the trigger as counsel for the plaintiffs in McDonald v. City of Chicago, 08 C 3645, who actually filed suit here on the same morning that Heller was decided in Washington! What is eminently plain is that both sets of lawyers--the counsel who are handling both of these cases and another set of lawyers in McDonald--came loaded for bear, on the assumption that the Supreme Court majority would rule as it did.

Village of Oak Park. Although counsel's constitutional arguments are set out in 15 well-written pages,[2] they may be encapsulated in a simple syllogism:

> 1. Under <u>Heller</u>, the Second Amendment's guaranty of the right to keep and bear arms has invalidated the District of Columbia's prohibition on the possession of handguns.
>
> 2. Almost all of the guaranties that apply against the federal government and its agencies under the Bill of Rights (the first ten amendments to the Constitution) have been held to have been incorporated in the guaranties that apply against the states and their subordinate units of government under the Fourteenth Amendment.
>
> 3. Ergo, the Second Amendment's guaranty of the right of the people to keep and bear arms, as construed in <u>Heller</u>, also extends to Oak Park and Chicago via the Fourteenth Amendment. QED.

That approach, however, ignores a fundamental and critical jurisprudential curb that confronts a district judge such as the writer who is asked to confirm that third proposition--the judge's duty to follow established precedent in the Court of Appeals to which he or she is beholden, even though the logic of

---

[2] After brief introductory paragraphs, the remaining 14 pages of the two memoranda are word-for-word replicas of each other. This memorandum order will accordingly cite only to the memorandum filed in the City of Chicago case.

more recent caselaw may point in a different direction.  As stressed in <u>Sabin v. United States Dep't of Labor</u>, 509 F.3d 376, 378 (emphasis in original)--one of many cases standing for the same proposition:[3]

> The Supreme Court has told the lower courts that they are not to anticipate the overruling of a Supreme Court decision, but are to consider themselves bound by it until and unless <u>the Court</u> overrules it, however out of step with current trends in the relevant case law the case may be.

That posture of the Court of Appeals vis-a-vis the Supreme Court is of course echoed in the posture of this Court vis-a-vis our Court of Appeals.

In this instance our Court of Appeals has squarely upheld the constitutionality of a ban on handguns a quarter century ago in <u>Quilici v. Village of Morton Grove</u>, 695 F.2d 261 (7th Cir. 1982).  And in reaching that conclusion, <u>Quilici</u>, <u>id</u>. at 269 relied on the Supreme Court's decision in <u>Presser v. Illinois</u>, 116 U.S. 252, 265 (1886):

> It is difficult to understand how appellants can assert that <u>Presser</u> supports the theory that the second amendment right to keep and bear arms is a fundamental right which the state cannot regulate when the Presser decision plainly states that "[t]he Second Amendment declares that it shall not be infringed, but this... means no more than that it shall not be infringed by Congress.  This is one of the amendments that has no other effect than to restrict the powers of the National government...."

---

[3] See also, e.g., <u>United States v. Santiago-Ochoa</u>, 447 F.3d 1015, 1020-21 (7th Cir. 2006).

In doing so, Quilici, id. at 270 rejected arguments (1) that later Supreme Court decisions that had incorporated other Bill of Rights provisions into the Fourteenth Amendment had effectively overruled Presser and (2) that the entire Bill of Rights had been implicitly incorporated into the Fourteenth Amendment to apply to the states.

Indeed, Heller itself (128 S.Ct. at 2812-13) confirmed that both Presser and the Court's predecessor decision in United States v. Cruikshank, 92 U.S. 542 (1876) have held that the Second Amendment applies only to the federal government. Heller, id. at 2812 described Cruikshank as having "held that the Second Amendment does not by its own force apply to anyone other than the Federal Government," after which Heller, id. at 2813 n.23 went on to state:

> With respect to Cruikshank's continuing validity on incorporation, a question not presented by this case, we note that Cruikshank also said that the First Amendment did not apply against the States and did not engage in the sort of Fourteenth Amendment inquiry required by our later cases. Our later decisions in Presser v. Illinois, 116 U.S. 252, 265, 6 S.Ct. 580, 29 L.Ed. 615 (1886) and Miller v. Texas, 153 U.S. 535, 538, 14 S.Ct. 874, 38 L.Ed. 812 (1894), reaffirmed that the Second Amendment applies only to the Federal Government.

To be sure, as the just-quoted language reflects, both Cruikshank and Presser long antedated the more modern jurisprudence of implied incorporation that began with the initial suggestion in Gitlow v. New York, 268 U.S. 652 (1925)

4

that the First Amendment was brought into play against the states via the Fourteenth Amendment, and then continued with selective incorporation thereafter. But Heller deliberately and properly did not opine on the subject of incorporation vel non of the Second Amendment (after all, that question was not before the Court). It is simply wrong--an overreaching obviously prompted by the enthusiasm of advocacy--for plaintiffs' counsel to state (Mem. 8-9, emphasis added):

> Heller's holding that the Second Amendment guarantees an individual right to keep and bear arms, including handguns, squarely overrules the Seventh Circuit's ruling that "the right to keep and bear handguns is not guaranteed by the second amendment."

This Court should not be misunderstood as either rejecting or endorsing the logic of plaintiffs' argument--it may well carry the day before a court that is unconstrained by the obligation to follow the unreversed precedent of a court that occupies a higher position in the judicial firmament. But as later-to-be-Justice Oliver Wendell Holmes famously observed in 1881 in The Common Law:

> The life of the law has not been logic: it has been experience.

In sum, this Court--duty bound as it is to adhere to the holding in Quilici, rather than accepting plaintiffs' invitation to "overrule" it (!)--declines to rule that the Second Amendment is incorporated into the Fourteenth Amendment so as to be applicable to the Chicago or Oak Park ordinances. These actions

5

are set for a status hearing at 8:45 a.m. December 9, 2008 to discuss further proceedings.

_____
Milton I. Shadur
Senior United States District Judge

Date: December 4, 2008